Casey, Ch. J.,
delivered the opinion of the court:
This is a claim for the recovery of $7,054 29,being a balance alleged to be due on several vouchers. The claim arose out of *225 subsistence furnished to men who were afterwards mustered into the service of the United States and formed the 131st regiment Illinois volunteers, in the fall of 1862.
The subsistence was furnished by the claimants while the regiment was being recruited and organized, at Camp Massac, near the town of Metropolis, in Massac county, Illinois.
The petition alleges a contract made with Colonel Neely for the subsistence of these men at the rate of 38 cents per man per day; and vouchers are signed by the several captains of the respective companies certifying the number of men subsisted in the different companies, and for what length of time. The contract alleged with Colonel G-. W. Neely is not produced. The claimants allege that it was filed with the papers relating to their claim in the War Department ,• and the officers of the appropriate departments certify that after diligent search there they have been unable to find it. Colonel Neely was examined in reference to the contract, and says:
“I made that contract for subsistence with Mr. Kirkham, one of the claimants; my authority for making the above contract was a general order issued by the adjutant general of the State of Illinois, confirmed and approved by Richard Yates, then governor of the State of Illinois; as I best recollect, that contract for subsistence, at above price, was reduced to writing, and is, I suppose, now on file in the proper office."
He says he approved of each of the vouchers, the balances on which is claimed in this suit.
It is not shown when this regiment, or any of the officers who give the vouchers in this case, were mustered into the service of the United States, or indeed that they were ever so mustered into the United States service, or had any lawful authority to sign these vouchers and thus create a charge against the United States. It rather appears that the subsistence was furnished before the regiment was mustered in, and while it was being recruited 5 and from Colonel Neely’s testimony, in making the contract he appears to have been acting under State authority, and not under any warrant or power from the national government. It must therefore be apparent that if Colonel Neely, who made the contract, and the officers who gave the vouchers, were not officers or agents of the United States at the time, their acts were not binding upon the government of the United States. This is the exact condition in which the evi *226 deuce presented to us leaves this claim. Tliere was therefore no express contract in reference to this matter between the United States and the claimants. If there was any liability to paj1-, it arose on an implied engagement, irrespective of the contract with Colonel Neely, or the vouchers. That was to pay what the subsistence was worth. This the parties appear to have done, by fixing the rate of payment at 28 cents instead of 38 per man per day. This amount is paid by the United States and received by the claimants, and who at the time signed a receipt and acquittance in full of the vouchers. There is no evidence that there was any duress, or undue influence brought to bear on these claimants to compel or induce them to sign these receipts; nor that they protested or even objected at the time to the deductions then made. In the absence of such evidence we must presume that the whole thing was fair, open, and honest. The claim as against the United States was not a settled, fixed, and liquidated claim for any specific amount. At best, the only obligation was to pay so much as the supplies furnished should be reasonably worth, without regard to the contract of Neely or the vouchers. And the only inference we can draw from the evidence given is, that the deductions were made and the amounts adjusted with the consent and acquiescence of the claimants. A receipt in full of any demand is al ways prima facie that the whole claim has been paid and adjusted. It is liable to be rebutted and explained by evidence which shows that it was otherwise than it purports to be. But a receipt, as much as any other writing, is prima facie evidence of the fact it recites, and when it says that the payment was in full of any designated claim, it is proof of that fact, unless overthrown by other evidence in the cause.
The vouchers themselves are irregular: some of them are in the name of William E, Brown, others in the name of Kirkham & Brown; and if they were set up here as express contracts, would only support actions iiu the name of the parties to whom they were given.
Taking all the facts in the case, we think the case is not made out by the proofs laid before us, and we therefore dismiss the petition.