Mauden, Judge,
delivered the opinion of the court:
On February 19,1935, the Government invited bids for the construction of some seven miles of roadway in Virginia in the Shenandoah National Park. The bids were opened on March 21, and the plaintiff was the low bidder. On March 25 the Government wrote the plaintiff that he had been recommended for the contract and that, in anticipation that the recommendation would be followed, copies of the formal written contract were enclosed for his signature and return, together with the required performance bond. The formal contract was dated March 30. The plaintiff signed the copies of the contract, obtained the bond, and sent them to the Government, which, on April 1, acknowledged their receipt. Government practice is that, after the contractor has signed and returned the several copies of the contract, the Government, by a contracting officer, signs them and sends one copy back to the contractor. In the instant case there was delay in the signature of the contract by the Government because, as we shall see, there was a question about the title to the right of way for the road.
On April 24 the Government wrote the plaintiff saying that the 20 day period prescribed by the N. R. A. Code for the award of contracts had expired and asking if the plaintiff *463 would accept the contract il awarded to Mm witMn sixty days after March 21, the day the bids had been opened. The plaintiff said in reply that he would, but said that he had incurred expense in preparing for the performance of the contract. On April 30 the Government notified the plaintiff that his hid had been accepted on April 25, contingent upon execution of the formal contract and bond. As we have said, the plaintiff had, in March, signed several .copies of the formal contract and furnished the bond.
On May 3, the Government by telegram advised the plaintiff that the contract should not have been awarded because there were unresolved difficulties concerning the acquisition of the right of way. On May 7 the Government wrote the plaintiff that litigation concerning the right of way had been appealed to the Supreme Court of the United States, and that for that reason the contract had not been signed by the Government. On June 18 the Government wrote thé plaintiff that the Supreme Court had adjourned for the summer without deciding the question, and that it would be decided in the fall. The case was decided on November 25. The next day the Government wrote the plaintiff that the question of the right of way had been settled, and that the Government was ready to sign the contract except for the fact that it would be necessary to insert in the contract provisions that the plaintiff would comply with the requirements of the N. R. A. Code and the Bituminous Coal Act. 15 U. S. Code 828). On December 4, the plaintiff agreed to these changes, but asked that, on account of the imminence of winter, he be not required to start the work before March 1,1936.
The Assistant Secretary of the Interior signed the contract for the Government on December 27,1935, but the plaintiff was not given notice to proceed until March 30, 1936, after he had, on March 28, requested the notice. The contract, when finally signed in December, 1935, still bore the date March 30, 1935. The provisions about the N. R. A. Code and the Bituminous Coal Act were agreed to on an attached sheet not dated, as to the plaintiff and the Government, but which was assented to by the surety on December 5,1935.
*464 The plaintiff began the work in the spring of 1936 and completed it in the working seasons of 1936 and 1937, within the number of days specified in the contract, which number did not begin to run until after notice to proceed was given.
The plaintiff asserting that he had a contract from April 30,1935, the date when he was notified that his bid had been accepted, urges that the Government breached the contract, to his damage, by not making available to him the right of way on which the work was to be performed. The asserted elements of his damage are equipment rental, extra freight charges on the shipping of equipment, standby expenses of a superintendent and steady time men who were idle because of the delay, and unemployment insurance and social security taxes which were not in effect in 1935, but which came into effect, the former in 1936 and the latter in 1937.
The Government urges that there was no contract until December 27, 1935, when the formal contract was signed by the Assistant Secretary of the Interior, because of the statutory provision in effect at that time requiring that contracts made by the Department of the Interior be signed “by the contracting parties with their names at the end thereof.” It further urges that even in the absence of this statutory provision, the fact that the plaintiff agreed, on December 4, 1935, to changes in the written contract, prevented the contract from being effective before that date. It further says that, because the plaintiff was not in possession of and had not paid the manufacturers for the equipment for which rental is claimed, no rental may be recovered; and that there is no adequate proof of the amount of the increased freight charges, or the existence or amount of cost of steady time superintendence or labor. As to the unemployment insurance and social security taxes, it says that the statutes creating them were enacted in August 1935, to take effect, the former in 1936 and the latter in 1937, and the contract having been made in December 1935, after their enactment, the plaintiff was required to anticipate them and cannot assert them as an unanticipated expense.
We take up first the several elements of the plaintiff’s asserted damage. As to the rental value of equipment, the plaintiff claims full rental value from the time he sent his *465 first orders to the factories on May 2 or 3, 1935, until he put the machines to work, some of them on the Mountain-burg, Arkansas job in the summer of 1935 after it was evident that the Virginia job would be delayed for several months, and some of them on the Virginia job after it was started in 1936. The factories did not even accept the orders until some months after they were sent, and some of the orders were not sent by the plaintiff until 1936. None of the machines were to be delivered' or paid for until delivery was requested by the plaintiff. He did not request delivery until he was ready to use the machines. They may not even have been manufactured until shortly before delivery was requested and they were delivered. In these circumstances no rental value could be recovered, regardless of the validity or invalidity of the plaintiff’s contract with the Government.
The claim for increased freight charges is not proved. Some of the machines, which the plaintiff would have had shipped from Quincy, Illinois, Milwaukee, Wisconsin, and Lorain, Ohio, where they were manufactured, to the Virginia job if that job had been ready, were shipped instead to the Arkansas job, and, when it was completed, to Virginia. The plaintiff presented figures showing that freight rates from Arkansas to Virginia were much higher than those from Lorain, Ohio, to Virginia, disregarding the fact that many of the items did not come from Lorain, but from more distant points in Wisconsin and Illinois.
As to the wages paid to a superintendent and a crew of steady time men whose time was wasted because of the delay in starting the Virginia job, the proof is not adequate to show either that there were such men or that any amount was paid on that account.
It is proved that unemployment insurance and social security taxes were $1,553.69 greater than they would have been if the work could have been done in 1935 and 1936, as the plaintiff expected to do it when he made his bid. Since such increased taxes would be a proper element of damages for a breach of contract by the Government which delayed a contractor and thus subjected him to them, we must consider the legal status of the contract.
*466 Section 3744 of the Revised Statutes, 41 U. S. C. 16, which was repealed in 1941, but was in effect in 1935, contained the following language:
Except as otherwise provided by law, it shall be the duty of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Interior, to cause and require every contract made by them severally on behalf of the Government, or by their officers under them appointed to make such contracts, to be reduced to.writing, and signed by the contracting parties with their names at the end thereof; * * *.
Because of this statute, the plaintiff could not have sued the Government for breach of contract until the contract was signed by the Assistant Secretary of the Interior on December 27, 1935. St. Louis Hay and Grain Co. v. United States, 191 U. S. 159, affirming 37 C. Cls. 281. He could, if he had conferred a benefit on the Government in the performance of an unsigned contract, recover the value of the benefit on a quantum meruit basis. In the plaintiff’s case, the several elements of damages on which he bases his claim did not involve benefits to the Government, but only costs to the plaintiff. This is true even of the social security and unemployment insurance taxes, since so much of the tax money as was paid to the Government was taken by it, not for its benefit, but as a trustee or quasi-trustee for the employees who were to benefit from the Social Security law.
If, then, the contract had remained unsigned, or had been dated in December of 1935, when it was signed, the plaintiff could not recover for damages resulting from the delay in signing it, which damages accrued either before or after it was signed. We have then, the question whether the fact that the contract, when signed, still carried March 30, 1935, as the date of the contract, improves the plaintiff’s position. The plaintiff had, as we have seen, signed the contract in March, but had signed the appended sheet agreeing to comply with the N. R. Á. Code and the Bituminous Coal Act on December 4.. .When it was signed by the Government in December, and accepted by the plaintiff, with the noted modification, did the parties intend that rights under the contract *467 should be determined as if it had been completely executed in March? We think not. The Government, which was still legally free to refrain from binding itself, could hardly have intended, by signing, to validate, without any attempt to ascertain their amount, potentially large claims for delay. And there was nothing in the plaintiff’s words or conduct to indicate that he would assert any such claims. He did, naturally, complain of the delay in getting the contract signed so that he could start the work. In spite of the fact that he had signed the contract, back in March, he must have known, and could have ascertained on inquiry, that he was not bound by his signature because of the long and unanticipated delay. He knew that the 60 day period for which he had pledged his bid had expired and that the award made to him within that period had been revoked as improvidently made. His conduct and attitude in the period of delay was that of a man who still wanted the contract and hoped that the Government would get the right of way question settled so that he could go to work. We think that, in the circumstances, the parties contracted as of December, when they finally were clear of the obstacles to the contract, and the work could begin as soon as the weather permitted, and that neither party intended, by refraining from changing the date on the contract, to bring to life potential lawsuits based upon a fiction that the contract had been made many months before one of the parties, i. e., the Government, had been in control of the subject matter so that it could make a contract about it. The contract being made in December, the effect of a taxing statute enacted some months earlier cannot be validly asserted as an element of damage.
Our conclusion is that the plaintiff’s petition should be dismissed. It is so ordered.
WhitakeR, Judge,; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.