ESCOTE MANUFACTURING COMPANY, Inc.,

v.

UNITED STATES.

No. 411-56.

United States Court of Claims.

Jan. 14, 1959.

Edwin J. McDermott, Philadelphia, Pa., for plaintiff.

George L. Ware, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LARAMORE, Judge.

Plaintiff sues for the return of a contract bid deposit on the ground that its offer was not accepted by defendant within the time stipulated therein. Defendant counterclaims for damages for breach of plaintiff's contract to purchase.

The facts are these: On August 19, 1955, the defendant, acting through the property disposal officer at Picatinny Arsenal, invited sealed bids on 52 items of surplus material under Invitation No. 28–017–s–56–5. By the terms of such invitation, bids were to be received until 10:30 A.M. daylight saving time, September 12, 1955, and then to be publicly opened. The invitation was sent to a large number of dealers, one of which was the plaintiff firm, which had from time to time bid on surplus Government property. Bids were received from a total of 17 bidders, including plaintiff. The bid was standard form 114 revised.

The plaintiff bid on each of 15 items and as an alternative, it bid on the last 12 items (black adhesive tape) in a lump sum. In submitting its bid, plaintiff accompanied it with a check in the sum of $2,600 as a bid deposit. Plaintiff's bid was conditioned upon its acceptance within 10 calendar days after the date of opening.

Plaintiff was the highest bidder on two items of nylon thread and nylon twine, and 12 items as a group, consist-

ing of 60,000 rolls of tape, for a total of $12,751.99. Although the invitation contained the caution to bidders "Caution: Inspect the Property," no inspection of the property was made by plaintiff either before or after the submission of its bid. Bidders were told by the terms of the invitation that the property therein described might be inspected prior to the opening of bids on five stated days between 9:00 A.M. and 2:00 P.M.

The general sale terms and conditions made a part of the invitation read in part as follows:

"1. Inspection.—Bidders are invited and urged to inspect the property to be sold prior to submitting bids. Property will be available for inspection at the places and times specified in the Invitation. The Government will not be obliged to furnish any labor for such purpose. In no case will failure to inspect constitute grounds for a claim or for the withdrawal of a bid after opening.

"2. Condition of Property.—All property listed herein is offered for sale "as is" and "where is," and without recourse against the Government. If it is provided herein that the Government shall load, then "where is" means f. o. b. conveyance at the point specified in the Invitation. The description is based on the best available information, but the Government makes no guaranty, warranty, or representation, expressed or implied, as to quantity, kind, character, quality, weight, size, or description of any of the property, or its fitness for any use or purpose, and no claim will be considered for allowance or adjustment or for rescission of the sale based upon failure of the property to correspond with the standard expected; this is not a sale by sample.

\*      \*      \*      \*      \*      \*

"4. Bid Guarantee.—The bidder agrees that (1) the bid will not be withdrawn within the time specified for acceptance after the opening of bids (60 calendar days if no period be specified by the bidder), and will during that time remain firm and irrevocable, and that (2) the bidder will pay to the Government the purchase price of the property in accordance with the bid if accepted. If a bid deposit is required the bid must be accompanied by said bid deposit. In the event of any default by the bidder or any failure by the bidder to comply with all terms and conditions of this contract, any deposit made by the bidder may be applied by the Government to any loss, cost, and expense occasioned to the Government thereby, including any loss, cost, and expense incurred in selling the property and including any difference between the amount specified in the bid and the amount for which the Government may sell the property, if the latter amount be less than the former. Deposits accompanying bids which are not accepted will be returned. Deposits of successful bidders may be applied against the contract price, and upon completion of the contract, any excess of the deposit will be returned to the bidder.

"5. Payment.—Payment of the balance of the purchase price, if a deposit has been made, or otherwise of the full purchase price, shall be made by cash, or by certified check, cashier's check, bank draft, postal or express money order, payable to the Treasurer of the United States. Unless otherwise specified by the Government payment of the full purchase price, subject to any adjustment for variation in quantity or weight pursuant to Condition No. 8, must be made prior to the date specified for removal and prior to delivery of any property. If any such adjustment is necessary, then payment must be completed, unless otherwise specified by the Government, immediately subsequent to adjustment. If the successful bidder fails to make full and final payment

as herein provided, the Government reserves the right upon written notice to the successful bidder, to sell or otherwise dispose of any or all of such property in the Government's possession and to charge the loss, if any, to the account of the defaulting bidder. The original Purchaser will in no way be released from full compliance with the terms and conditions of the sale by his resale of the property.

\*    \*    \*    \*    \*    \*

"7. Delivery and Removal of Property.—The Purchaser shall be entitled to obtain the property upon vesting of title of the property to him, unless otherwise specified in the Invitation to Bid. Delivery shall be at the designated location, and the Purchaser shall remove the property at his expense. The Purchaser shall reimburse the Government for any damage to Government property caused by the removal operations of the Purchaser. If the Purchaser fails to remove the property within the specified time, the Government shall have the right to charge the Purchaser and collect upon demand a reasonable storage charge if the property is stored on premises owned or controlled by the Government, or store the property elsewhere for the Purchaser's account, and all costs incident to such storing, including handling and moving charges, shall be borne and paid by the Purchaser; in addition to the foregoing rights, the Government may, after the expiration of thirty (30) days after the date specified for removal and upon ten (10) days' written notice (calculated from the date of mailing) to the Purchaser (which ten (10) days' written notice may, at the option of the contracting officer, be included either partly or wholly in the thirty (30) days specified above or may be in addition thereto), resell the property, applying the proceeds therefrom against the storage and any other costs incurred for Purchaser's account. Any details regarding removal of the property as may not be provided for herein, shall be arranged with the contracting officer, which arrangement shall be reduced to writing. \*   \*   \* "

On or before September 15, 1955, Mr. William E. Wald, who was associated with plaintiff in the purchase and sale of goods, telephoned the arsenal from plaintiff's office and visited the arsenal in person, presenting himself as plaintiff's representative. On each occasion, Wald was told that plaintiff was high bidder and had received the award. On his visit to the arsenal, Mr. Wald attempted to secure a modification of the sale price for the plaintiff. He also requested that 36 rolls of the tape *purchased* be sent at once to plaintiff. The 36 rolls of tape were sent to plaintiff by Railway Express collect. Plaintiff accepted the tape on September 26 and paid the express charges. In its brief, plaintiff concedes that the Government is entitled to recover the cost of the 36 rolls of tape above referred to.

On September 20, 1955, at 4:00 P.M., the contracting officer, C. O. Smith, property disposal officer at the arsenal, sent a letter to plaintiff by registered mail, return receipt requested, inclosing three copies of Invitation, Bid, and Acceptance (as the form is headed) for signature by the plaintiff and return as indicated. The letter reads as follows:

"Inclosed are three (3) copies of Contract No. DA (s) 28–017–ORD– 99 covering sale to your company, by this Arsenal, of surplus, thread, nylon and tape. These copies are to be signed as indicated on page 1 and returned to this Arsenal, ATTN: Property Disposal Officer. Upon acceptance by the contracting officer a copy will be returned for your file.

"Your guarantee deposit of $2,- 600.00 is being retained as partial payment of this property. It is requested that a cashier's or certified check be forwarded in the sum of

$10,151.99, made payable to the Treasurer of the United States, to cover the cost of property to be delivered under this contract.

"It is requested that the amount due and signed copies of contract be returned immediately and that arrangements be made to take delivery of this material within 10 days from notice of this award, or a charge of $10.00 per day will be applied to your account for each day the property remains here without removal. Pick up can be made any

Accepted as to Items Numbered
Items Nos. 29, 30 and 41 thru 52 only.
Title of Contracting
Officer
Property Disposal Officer
Guarantee Deposit............$2,600.00

week day except Saturday between 8:30 A.M. and 2:30 P.M., EDT. If shipment is to be made by rail or motor freight, attention should be given to para 18 of Additional Sale Terms, page 3.

"For the Commanding officer:"

The above-quoted letter was received by plaintiff on September 22, 1955. The contracting officer's name on the acceptance by the Government appears in typewritten form but was not signed by him. Otherwise the form contained the following:

Date of Acceptance: 15 Sept. 55

Signature of Contracting
Officer
C. O. Smith
Total Cost of Contract ........$12,751.99

On October 7, 1955 Mr. Smith, by letter, requested that plaintiff remove the property *it had purchased*, and reminded plaintiff of the $10 per day storage charge being made. This request was repeated on October 19, 1955, and at that time plaintiff was notified that the property would be resold for its account unless removed by October 21, 1955. 143 invitations for bids were sent out, 5 bids were received, and on November 30, 1955, the goods were resold to the highest bidder for each item. The total amount received from the resale was $5,515.15.

Demand was made on plaintiff by C. O. Smith, by letter dated December 20, 1955, for $4,936.84 due under the contract. This amount consisted of the total contract price, plus 30 days storage at $10 per day, less the $2,600 deposit, and less the amount received from the resale. The resulting figure of $4,936.84 has not been paid by plaintiff and is the subject of defendant's counterclaim.

Plaintiff contends that the contracting officer (C. O. Smith) did not accept its bid because the "acceptance section of standard form 114, revised, did not contain the autographic signature of the

contracting officer." No claim is made that the form of contract and covering letter did not reach plaintiff within the prescribed time; that the document differed from the intention of the parties; that the resale was procedurally defective or that the claimed storage charges were improper.

Thus the very narrow issue is presented as to whether under the facts and circumstances heretofore set forth a valid and binding contract was entered into between the parties.

Assuming the parties have the necessary authority to contract, which is not controverted, plus consideration, which is not controverted, and absent fraud, which is not controverted, the necessary elements of a binding contract are offer and timely acceptance without modification.

Beyond question, an offer was made by plaintiff and beyond question the defendant accepted plaintiff's offer, as shown by the wording of the September 20, 1955 letter in which the contracting officer stated that the $2,600 deposit was being retained as partial payment for the property, and requested a check for the balance " * * * to cover the cost of

property to be delivered under the contract." The letter further explained delivery arrangements and warned that a charge of $10 per day would be made in the event of failure to take delivery within the specified time. In addition, the acceptance form, while unsigned, contained all the information necessary to apprise plaintiff that its bid had been accepted. Furthermore, plaintiff was notified of the award through his associate Mr. Wald on two occasions. All this occurred on or prior to the acceptance date set forth in the bid form.

■ The only condition of plaintiff's bid was that it be accepted within 10 calendar days after the date of opening. This was done. In other words, the plaintiff's bid constituted the offer and the Government's acceptance completed the contract. United States v. McShain Inc., D.C.Cir., 258 F.2d 422. Furthermore, plaintiff's associate, Mr. Wald, ordered part of the material shipped to plaintiff's office and plaintiff accepted same. All this, in the face of the provision in the invitation which specifically stated " * * * this is not a sale by sample." Therefore, it must have been a partial shipment under the award, and plaintiff admits the Government is entitled to pay therefor.

■ Inasmuch as a contract was entered into between plaintiff and defendant, it would make no difference whether the signature of the contracting officer was on the acceptance form. Plaintiff points to no statute or regulation requiring contracts of this nature to be in writing, and we know of none. Consequently, an oral contract in this instance would be just as binding on the plaintiff as well as the Government as though it were in writing. The cases cited by plaintiff, Gillespie v. United States, 47 Ct.Cl. 310; St. Louis Hay and Grain Co. v. United States, 37 Ct.Cl. 281, holding that a bid could only be accepted by means of a written signature, were decided under a statute long since repealed. Rev.Stat. § 3744. Thus it seems quite apparent that the contract forms were sent to plaintiff merely to meet the requirements of the Government's bookkeeping system, rather than to create a binding agreement.

■ A binding and enforceable contract, having been entered into between plaintiff and defendant, brings to bear the question of defendant's counterclaim. By the terms of the Invitation, Bid, and Acceptance document, plaintiff agreed to remove the property within 10 days after date of opening, and the evidence shows the property remained on the premises of the Government 30 days beyond the allotted time. However, the bid form merely provides that the Government shall have the right to charge the purchaser a reasonable storage charge. The evidence does not indicate what a reasonable charge would be, and since there was no meeting of the minds on this issue the Government's claim in this instance would fail for lack of proof.

■ The above document also specified that if full and final payment was not made as provided, the Government could resell and charge the loss to the account of the defaulting bidder. Obviously the bidder defaulted. The Government resold for $5,515.15. The total contract price owing by the plaintiff was $12,751.99. Plaintiff is entitled to credit of the $2,600 deposit, plus $5,515.15 as a result of a resale, or $8,115.15. This would make due and owing the Government the sum of $4,636.84 for which the defendant is entitled to judgment on its counterclaim.

Plaintiff's petition is dismissed, and judgment will be entered for defendant on its counterclaim in the amount of $4,636.84.

JONES, Chief Judge, EDGERTON, Circuit Judge, sitting by designation, and MADDEN and WHITAKER, Judges, concur.