**Nick WOLL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–564C.

United States Court of Federal Claims.

Dec. 8, 1999.

Scott W. Horngren, Portland, OR, for plaintiff.

Matthew P. Reed, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

### ORDER

MILLER, Judge.

This case is before the court after argument on defendant's motion to dismiss for lack of subject matter jurisdiction and cross-motions for summary judgment. At issue is whether an enforceable contract existed between plaintiff and a government agency.

### FACTS

The parties do not dispute the facts that give rise to plaintiff's suit. In the mid–1980s the Forest Service of the United States Department of Agriculture (the "Forest Service"), responsible for the care of certain federal lands, became interested in the use and development of logging systems that caused a minimal environmental impact. The interest arose from the recognition that logging's impact on the national forests was significant—causing soil erosion, stream sedimentation, and wildlife disturbance.

Nick Woll ("plaintiff"), a helicopter logger, lifted or "yarded" felled trees from the forest floor and delivered them by helicopter to a predetermined location. Plaintiff developed a hybrid airship in which a helium balloon is attached to a helicopter. The balloon lifts the weight of the helicopter, thereby allowing the helicopter's rotor blades to work to lift the timber. This hybrid airship design (the "aerial yarding system") reduces costs and ensures minimal environment disruption.

The Forest Service planned to test the aerial yarding system with any one of seven proposed timber sales in California, Idaho, Oregon, and Washington, provided that the site was acceptable to the Forest Service Research department and plaintiff. Plaintiff was to receive $1,500,000.00 and additional fees per thousand board feet of timber. Because of the potential savings and the environmental benefits, the Forest Service agreed to test plaintiff's aerial yarding system pursuant to the Study Plan Monitoring the Performance of a New Aerial Yarding System (the "Study Plan"). The Study Plan provided that the aerial yarding system would be tested with the POC Aerial Salvage Timber Sale of Region 5 (the "Region 5 timber sale") on the Six Rivers National Forest in California. The Region 5 timber sale would produce approximately one million board feet. Although the Forest Service signed the Study Plan, plaintiff did not sign it.

The Region 5 timber sale contract required the successful bidder to yard the logs with plaintiff's aerial yarding system. However, before the Region 5 timber sale could be awarded to Reservation Ranch, the successful bidder, the Northcoast Environmental Center and the Klamath Forest Alliance sued the Forest Service over the safety of the Northern Spotted Owl. As part of the settlement in that litigation, on December 3, 1990, the Forest Service suspended the Region 5 timber sale. Prior to the settlement, the Forest Service notified plaintiff that it would continue to search for an alternate testing site in Region 5. On July 8, 1992, the entire timber sale was canceled. The aerial yarding system could have been tested several times since 1992, because the Forest Service Regions 5 (California) and 6 (Oregon and Washington) have sold approximately 9 million board feet of timber at seemingly mutually agreeable locations.

Plaintiff filed suit for breach of contract for failure to study his aerial yarding system and moved for partial summary judgment.

### DISCUSSION

1. *Summary judgment standard*

Summary judgment is appropriate when there are no genuine issues of material fact

in dispute and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine when the evidence permits a reasonable jury to return a verdict in favor of the non-movant. *See id.* Both parties have the burden of establishing that there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the capacity of opposing each other's motion, plaintiff and defendant have the burden of providing sufficient evidence, not necessarily admissible at trial, to show that a genuine issue of material fact indeed exists. *See id.* at 322, 324, 106 S.Ct. 2548.

### 2. *Contract formation*

Defendant contends that no contract exists between the Forest Service and plaintiff because the promise was illusory and no consideration was present in the contract. "A contract is a promise, or set of promises, for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." *Estate of Bogley v. United States*, 206 Ct.Cl. 695, 704, 514 F.2d 1027, 1032 (1975) (quoting 1 Williston, *Contracts* § 1 (3d ed.1957)) (holding that contract must have detriment incurred by offeree or benefit received by offeror at request of offeror). A valid contract requires parties, consent, consideration, and obligation. *See id.* "The offeree must give in return for the offeror's promise exactly the consideration which the offeror requests and the acceptance must be made absolutely and unqualifiedly." *Id.* (citations omitted). Thus, contract terms cannot be illusory. *See Modern Sys. Tech. Corp. v. United States*, 979 F.2d 200, 204 (Fed.Cir.1992) (noting illusory contract, such as "agreement to agree" does not bind party to accept performance).

1. Plaintiff conceded during argument that his earlier contention that he provided consideration to the Forest Service because he "paid [for devel-

### 1) *Consideration*

As a fundamental proposition, "a contract must be supported by sufficient and valuable consideration ... [and] past consideration is no consideration." *Estate of Bogley*, 206 Ct.Cl. at 705, 514 F.2d at 1033. Consideration is defined as a "detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor." *Id.*, 514 F.2d at 1033 (quoting 1 Williston, *supra* § 102).

Defendant argues the absence of stated consideration running to either the Forest Service or to plaintiff. Consideration runs to plaintiff because Reservation Ranch was to pay the Forest Service for the timber and "Reservation Ranch was to pay [plaintiff] $1.5 million ... for the demonstration." Declaration of Nick Woll, Oct. 8, 1999, ¶ 5.[1] Consideration runs to the Forest Service in the form of various study benefits. The Study Plan indicates:

> If successful, this yarding system could access roadless areas with minimal environmental impact and harvest valuable timber that cannot currently be harvested economically due to inaccessibility or site sensitivity.... Other benefits include the ability to operate from small landings or roads at moderate production rates commensurate with normal loading and hauling capacities. Consequently, the potential exists to increase the accessible timber base on most Forests.

Although the benefit to the Government is speculative, it is consideration nonetheless. Moreover, the Forest Service acknowledged in the Study Plan that it was sustaining a potential detriment of receiving a lower bid to log the timber:

> This study requires the timber sale purchaser to yard with a new hybrid neutral buoyancy aircraft that has never been used for commercial logging. Development and testing costs of one such system have been paid over at least a five year period by the developer, Nick Woll, of Sand Point, Idaho.

opment of the aerial system] over at least five years," Plf's Br. filed Oct. 12, 1999, at 15, reflects only past consideration.

However, first-time use of such a system may entail a higher than usual level of costs for preparation and set-up and also a higher level of uncertainty or risk by the purchaser, which could result in less bidding that usual for a comparable helicopter timber sale. Notwithstanding these possibilities, investment in this study promises to return multi-fold benefits, as described above.

### 2) *Illusory agreement*

Characterizing the Study Plan as illusory, defendant relies on language in the Study Plan describing it as merely a vehicle to evaluate a new aerial yarding system. Plaintiff reads the Study Plan as creating an obligation on the part of the Forest Service to " 'foster the use' of," Plf's Br. filed Oct. 12, 1999, at 12, plaintiff's aerial yarding system to demonstrate that system for study.

■ An illusory contract is an agreement in which one party gives consideration that is so insignificant that an actual obligation cannot be imposed. *See Torncello v. United States,* 231 Ct.Cl. 20, 42, 681 F.2d 756, 769 (1982) (citing 1 Corbin, *On Contracts* § 145 (1963)) (rhapsodizing that an illusory promise is like the mirage of the desert with its vision of flowing water). The enforceability of the agreement is forfeited by the insignificant promise. *See id.*

■ The Study Plan notably fails to mention any intent to contract. However, plaintiff cites *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985), to advance the proposition that it is the content of the document and not merely its title that controls. Plaintiff is correct that the agreement should be viewed as a whole. *See Abe L. Greenberg Co. v. United States,* 156 Ct.Cl. 434, 439–40, 300 F.2d 443, 446 (1962).

The Study Plan provides:

A proposal to study the performance of this system on a Forest Service timber sale in Region 5 has been accepted by National Forest Systems and Forest Service Research authorities. . . .

This document outlines the scope, objectives, and methods of a study effort that will identify the technical, economic, and operational feasibilities of logging with this new system. This study will include an evaluation of the potential applications of this airborne yarder to environmental issues and new perspectives in forest management. Analysis of data collected during the observations of this study will aid understanding and planning of future uses of this technology.

The language of the Study Plan manifests an agreement about the terms of a study, not future use or purchase of plaintiff's aerial yarding system. Although the Forest Service accepted plaintiff's proposal to study the performance of the aerial yarding system, the Forest Service expressed the need to evaluate the collected data and then plan any future use of this system. The Study Plan as a whole reveals that the Forest Service did not intend to contract with plaintiff, but only intended to enable a study of plaintiff's aerial yarding system.

■ Whenever one of the parties to an agreement can terminate without consequence, an enforceable contract does not exist. It is "clear that parties may not agree that one or both may walk away from all obligations without rendering the contract unenforceable." *Torncello,* 231 Ct.Cl. at 32, 681 F.2d at 764. The Study Plan provided that if the aerial yarding system were "damaged beyond use and cannot reasonably be expected to be repaired" or "cannot satisfactorily perform because of unforeseen and insurmountable circumstances . . . Purchaser may elect to yard Included Timber with a helicopter meeting environmental objectives."

If the aerial system were unable to yard the timber, the purchaser, Reservation Ranch, still could have performed and would have paid less to the Forest Service. Under the timber sale contract, Reservation Ranch would have paid the Forest Service $749.00 per thousand board feet of timber, if it were to have used the aerial yarding system, and $620.00 per thousand board feet, if it were to have used a helicopter instead of the aerial yarding system. Because Reservation

Ranch could terminate the Study Plan without consequence, an illusory contract exists.[2]

### 3. *Discharge and release*

■ Even if the Study Plan did not fail as an illusory agreement, parties to a contract may "freely agree to various forms of risk allocation." *Torncello*, 231 Ct.Cl. at 32, 681 F.2d at 764. The Study Plan includes a disclaimer:

> The involvement of the Forest Service, USDA in this study does not constitute endorsement or promotion of the new aerial yarding system or any other products being used or investigated, nor does it imply any commitment to foster any use beyond the study duration, nor does it commit any of the parties to any subsequent involvement.

Plaintiff reads the disclaimer as implying a commitment during the study. Although plaintiff acknowledges that "nor" signifies no commitment beyond the study duration, plaintiff construes this language as giving rise to a duty to promote the trial of plaintiff's aerial yarding system.

■ In any event, the Forest Service made explicit its intent not to incur liability based on the Study Plan. It accomplished this by reserving its right against liability. The Study Plan attached and incorporated "special C provisions" applicable to it that preclude any imposition of liability. The special C provisions were those included in the Region 5 timber sale contract. Among them was clause C9.7, which states that "[p]rovisions and requirements of the Study Plan, attached hereto, shall not be cause for liability." Thus, both Clause C9.7 of the Proposed Contract between Forest Service and Reservation Ranch and clause C9.7 of the Study Plan disclaim liability based on the Study

Plan.[3] Although plaintiff resists defendant's argument that the Study Plan incorporated this limitation of liability, the incorporation expressly makes applicable the limitation of liability provisions discharged and released the Forest Service from liability.[4] *See Inland Empire Builders, Inc. v. United States,* 191 Ct.Cl. 742, 752, 424 F.2d 1370, 1376 (1970).

### 4. *Motion to dismiss standard*

Assuming that, as plaintiff has argued, a valid contract existed between the Forest Service and plaintiff, defendant argues for dismissal for lack of subject matter jurisdiction.

When evaluating a motion to dismiss for subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint should be construed favorably to the pleader, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). In *W.R. Cooper General Contractor, Inc. v. United States,* 843 F.2d 1362 (Fed.Cir.1988), the court stated: "In cases such as this in which a party has moved to dismiss for lack of jurisdiction, we must consider the facts alleged in the complaint to be correct. If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." *Id.* at 1364 (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683, and cases). However, plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent evidence to establish jurisdiction. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds,*

---

2. The court notes that plaintiff could have terminated without consequence, as well.

3. Reservation Ranch was also absolved of any liability because the Study Plan provided for alternate means to perform its contract.

4. The circumstances giving rise to the absence of plaintiff's signature on the Study Plan do not reveal the necessary acceptance for a contract. *See Thomson v. United States,* 174 Ct.Cl. 780, 793, 357 F.2d 683, 691 (1966) (binding contract

formed when Government's agent gave United States Attorney's Office tacit authorization to order appraisal); *Escote Mfg. Co. v. United States,* 144 Ct.Cl. 452, 458, 169 F.Supp. 483 (1959) (binding contract formed when plaintiff accepted Government's invitation to bid by submitting high bid). The parties in *Thomson* had tacit approval and the showing of subsequent actual and completed work; the parties in *Escote* had a fully executed offer and acceptance.

846 F.2d at 748 (citing cases). In resolving a jurisdictional challenge, the court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matter outside the pleadings. *See Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985)

### 5. *Statute of limitations*

In suits filed against the United States under the Tucker Act, 28 U.S.C. § 1491 (1994), the statute of limitations is six years. *See* 28 U.S.C. § 2501 (1994); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1376 (Fed.Cir.1998). "The six-year statute of limitations ... may not be waived by either the Court of Federal Claims or the parties." *Alder Terrace*, 161 F.3d at 1376–77.

The Region 5 timber sale was canceled on July 8, 1992. Plaintiff did not file a breach of contract claim until July 7, 1998, the last date of the limitations period. Defendant maintains plaintiff should have filed suit as early as December 17, 1990, when the Forest Service advised plaintiff that litigation surrounding the endangered owl would delay or cause cancellation of the sale; or at the latest as of August 22, 1991, when plaintiff filed suit in federal court to compel the Forest Service to implement the sale; or as of March 5, 1992, when plaintiff's lawsuit was dismissed by the district court.

Plaintiff argues that he was uncertain that the Forest Service was canceling the Study Plan and that the Forest Service could still have fulfilled its obligation under the Study Plan by providing for alternative sales in which to implement the study. Had plaintiff filed earlier, he may have survived a motion that his suit was unripe, but the implication of the above events did not so limit plaintiff's options that plaintiff's delay should be fatal. Therefore, defendant's motion to dismiss based on the statute of limitations is denied.

### 6. *Contract Disputes Act*

Defendant asserts that summary judgment is warranted, even if a contract were to have existed, because plaintiff failed to obtain a contracting officer's final decision prior to initiating litigation, a requirement of the Contract Disputes Act, 41 U.S.C.A. § 605(a) (West 1987 & Supp.1999) (the "CDA"). Plaintiff counters that the contract is for research and development and addressed by the Tucker Act, not the CDA.

In the past, research contracts were not covered under the CDA. *See Institut Pasteur v. United States*, 814 F.2d 624, 628 (Fed.Cir. 1987). Institut Pasteur filed for a British patent after discovering what it believed to be the virus causing AIDS ("LAV" virus). Upon request by American scientists, Institut Pasteur sent samples of the LAV virus for use as research. The American scientists developed a rival virus which they also believed to cause AIDS ("HTLV–III" virus) and filed for an American patent. Institut Pasteur sued, alleging that HTLV–III was derived from a strain first isolated by Institut Pasteur and provided to the National Cancer Institute's scientists under promises of confidentiality and noncommercialization. The court determined that the contract did not come under the purview of the CDA because the primary function of the contract was "a collaborative research effort, not procurement of property or services." *Id.* at 628.

Defendant argues that more recent case law places research and development contracts squarely within the ambit of the CDA. *See American Tel. & Tel. Co. v. United States*, 177 F.3d 1368 (Fed.Cir.1999). The Navy awarded a "Total Package Procurement," requiring "research, development, and the delivery and testing of an engineering development model." *Id.* at 1370. The fixed price procurement contract was approximately $34.5 million, but AT & T claimed that it was due $91 million because of technical problems and other unknowns which arose throughout research and development. The opinion does not reveal a discussion of jurisdiction under the CDA, but appears to assume it, as the contract, stripped of its advanced technology, was a research and development contract for property, *i.e.*, a surveillance system. The putative contract in this case can be characterized as a collaborative testing effort. *Pasteur* teaches that the Study Plan is not the type of agreement that comes within the purview of the CDA.

## CONCLUSION

Based on the foregoing, defendant's cross-motion for summary judgment is granted, its motion to dismiss is denied, and plaintiff's partial motion for summary judgment is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

No costs.