(64 Misc. Rep. 627.)

PEOPLE ex rel. HILLIKER v. PIERCE et al.

(Supreme Court, Special Term, Chautauqua County.   October 28, 1909.)

1. MANDAMUS (§ 12*)—GOVERNMENTAL FUNCTIONS.

Where the Legislature has left no option but that an act be done, the court may, in its discretion, compel by mandamus the performance of the duty, whether it be a so-called governmental function or not.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 39; Dec. Dig. § 12.*]

2. MUNICIPAL CORPORATIONS (§ 266*) — IMPROVEMENTS — EXTENSION OF WATER SYSTEM—STATUTES—CONSTRUCTION—"MAY."

A waterworks system in a village of the fourth class was extended to supply all the inhabitants except four. Relator was the only one of the four to insist that it be extended to supply him, and he sued for mandamus. The cost of the extension would be less than $500. Village Law

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(Laws 1897, p. 434, c. 414) art. 8, § 224, as amended by Laws 1903, p. 307, c. 131, § 1, provided that a system of waterworks established under the article shall be under the control of the board of water commissioners, and that the board shall keep it in repair, and "may" extend the mains within the village, if the expense in any one year, in a village of the fourth class, shall not exceed $500, and that a board "may," in lieu of extending the mains, etc., use the amount specified in improving the existing system. The original cost of the system, which was met by an issue of bonds, relator being taxed for interest thereon, was $20,000, and there were 150 residences or places of business. The board had no money on hand to make the extension. *Held*, that the word "may," as used in the phrase "may extend" in any one year, etc., though permissive, would be construed "must," especially in view of the permissive character of "may" used in the last sentence of the statute, giving an alternative use of the money.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 712; Dec. Dig. § 266.*

For other definitions, see Words and Phrases, vol. 5, pp. 4418–4447; vol. 8, p. 7719.]

3. MUNICIPAL CORPORATIONS (§ 288*)—EXTENSION OF WATER SYSTEM—MANDAMUS—LACK OF FUNDS.

The board could not defend mandamus because they had no money on hand with which to make the extension, where, though the water board had no power to raise money by taxation, yet the board of village trustees had that power, and was obliged to raise money to pay expenses, including water supply and disbursements of the water board, as shown by Village Law (Laws 1897, pp. 400, 404, 437, c. 414) §§ 101, 110, 235; and hence, if the board made the extension, the trustees must include the expense in the annual tax levy.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 758, 759; Dec. Dig. § 288.*]

4. MANDAMUS (§ 113*)—TAXATION—EXTENSION OF WATER SYSTEM.

If in such case the board of trustees should fail to include the cost of extension in their annual levy, mandamus would lie to compel them.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 239; Dec. Dig. § 113.*]

Application by the People, on the relation of Harry L. Hilliker, against David Pierce and others, for a peremptory writ of mandamus. Writ granted.

Herman J. Westwood and Samuel S. Rolph, for relator.

Winfield S. Thrasher, for defendants.

HOOKER, J. This is an application for a peremptory writ of mandamus, requiring the defendants, as the board of water commissioners of the village of Forestville, N. Y., to extend the mains of the waterworks system in that village to a point in front of the residence of this relator. The village of Forestville was organized many years ago, under the provisions of the general village law. Fourteen years ago the village established and constructed a system of waterworks for the purpose of supplying water for domestic and other uses in the village. The defendants are now, and have been for a considerable time, the members of the board of water commissioners of the village. The relator owns property on Prospect street in the village, upon which is situated his residence, and although he has made repeated demands of the board of water commissioners to extend the mains of·

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the waterworks system to a point in front of his premises, in order that he might connect therewith, this has not been done, and he has remained unsupplied with water. The area of the village is between three and four square miles, the population is about 700 persons, and it contains between 150 and 200 buildings, used as residences or places of business. The cost of the waterworks system was $20,000, and this money was paid out of the proceeds of the bonds of the village issued for this purpose. The interest on these bonds has always been paid promptly, and the relator has never, so far, been directly assessed or taxed for water purposes, for the extension of water mains, or for the maintenance of the system. For a period of 10 years, or thereabouts, however, after the establishment and construction of the system, the village board of trustees, in some years, turned over to the board of water commissioners, from the general village fund, $150 in money in each of said years for water purposes. Except for a small debt incurred and still owing by the water board, the cost of extensions and the maintenance of the system have been met by the water rent, and the system is, in a large measure, self-sustaining. Mains for conducting water now extend to all residences and business places within the village, except four, of which the relator's house is one. Another one of these four lives on the same street with the relator, beyond him, and if the main were put through Prospect street to relator's premises it would go just so far toward supplying his neighbor, who lives just beyond. To supply the relator with water would require the laying of a main about 1,000 feet in length, and this could be done at an expense of about $60 for trenching and between $260 and $300 for 1½-inch pipe, which would be ample.

The defendants point out that the income from the water rent for the use now demanded by the relator would amount to about $8 per year, and it is also asserted by the defendants that the board of water commissioners have on hand no money or funds available for the expenses of the extension asked for. It does not appear that any others of the four unsupplied residents of the village have asked for or demanded an extension of the water mains to their respective residences. Article 8 of the village law deals with the subject of water, and section 224 (Laws 1897, p. 434, c. 414, as amended by Laws 1903, p. 307, c. 131, § 1), within that article, with the subject of the supervision and extension of the water system. That section reads:

"A system of waterworks acquired or established under this article shall be under the control and supervision of the board of water commissioners. The board shall keep it in repair and may, from time to time, extend the mains or distributing pipes within the village, if the expense thereof in any year in a village of the fourth class shall not exceed five hundred dollars. * * * If the estimated expense will exceed the above amount, such extension can only be made when authorized by a proposition adopted at an election. A board may, in lieu of extending the mains or distributing pipes, use the amount above specified, or a part thereof, in improving, bettering or perfecting the existing system, such as mains, reservoir, pumping station, filter and lands."

The determination of the question presented by this application depends upon the construction of this section. The relator's contention that he is as much entitled to be supplied with water as any other resident of the village is not without equitable consideration. He is the

owner of real estate in the village, which, with all other property situate there, is subject to taxation for general village purposes. Although the waterworks system was paid for out of the proceeds of the sale of bonds, yet the bonds some day will have to be paid, and it may be necessary, when they become due, to levy a general tax for their payment, in which case the relator's land will be taxed with the rest. It likewise appears that certain moneys have, from time to time, been actually appropriated from the general village fund and devoted to the payment of expenses of the waterworks system, of which money relator has paid his proportionate share, indirectly, if not directly. The liability of the relator for the expenses of the waterworks system, both establishment and upkeep, has been and will be the same as that of any other landowner in the village, and this in spite of the fact that relator has never yet had an opportunity of enjoying the benefits of the waterworks system. At first blush it may seem that a sum of money between $260 and $300 is rather large for the board of water commissioners to expend for the relator's sole benefit; but, when the facts are inquired into in detail, it seems it is not so far out of proportion. The system cost $20,000 for 150 to 200 residences and business places. The original expense was therefore about $125 each, on the average. When this system is extended beyond the relator's residence to his neighbor, the expense for extending to these two properties will not far exceed the sum of $150 for each. While equitable considerations alone are not sufficient to support this application, yet in the construction of this or any other statute the courts will not be blind to a construction which makes for fairness and common justice.

The defendants contend in their brief:

"The village, in availing itself of the permissive authority to construct and maintain a system of waterworks, conferred on all villages by the general act, is, in the exercise of such grant, acting in its municipal, public, and political character, exercising only a governmental function purely, and sustains no contractual relation with the inhabitants within its boundaries, and all governmental functions are solely discretionary. Such municipality, in the exercise of such function, is not liable in any manner for nonuser or a misuser of its powers."

I think it is incorrect to state, as an arbitrary rule for the determination of whether mandamus will lie, that the courts will not compel the performance of a governmental function, but may compel the performance of a nongovernmental or ministerial function. On the contrary, the distinction lies in this, whether it is discretionary with the party sought to be compelled to do or not to do the act, the performance of which is demanded. In other words, the court will not put its discretion in the place of the discretion of the defendants in mandamus proceedings. But where the Legislature has left no option with the defendant, but has specifically enjoined the performance of a particular duty, the court may, in their discretion compel the performance of that duty, whether it be a so-called "governmental function" or not. In Springfield Ins. Co. v. Keeseville, 148 N. Y. 46, 53, 42 N. E. 405, 406, 30 L. R. A. 660, 51 Am. St. Rep. 667, the court held that the supplying of water is a governmental function. But the court says:

"The investiture of municipal corporations by the Legislature with administrative power may be of two kinds. It may confer powers and enjoin their performance on the corporation as a duty, or it may create new powers to be exercised as governmental adjuncts and make their assumption optional with the corporation. But where a duty specifically enjoined on a corporation as such has been wholly neglected by its agent, and an injury to an individual arises in consequence of the neglect, the corporation will be held responsible."

The case at bar is not one where it is sought to charge the defendants or the village with damages for the misuser or nonuser of a governmental function; but it is sought here to compel these defendants to perform a duty, be it governmental or not, which, it is claimed, the Legislature has specifically enjoined on these defendants to perform. Conceding that supplying water is a so-called governmental function (Springfield Ins. Co. v. Keeseville, supra), nevertheless the courts may, in their discretion, interfere by mandamus to compel the performance of a governmental function, where the Legislature has directed how that function shall be performed. If, therefore, section 224 of the village law requires the interpretation that it was the legislative intent to direct the times at which water mains or distributing pipes should be extended, although this be, in the abstract, a governmental function, then the rule I have just noticed applies, and mandamus may lie.

The section provides that the water board shall keep the waterworks system in repair, "and may, from time to time, extend the mains or distributing pipes within the village, if the expense thereof, in any year, in a village of the fourth class, shall not exceed five hundred dollars." Then, after dealing with villages of other classes than the fourth, and with cases where the estimate of expense exceeds that amount, it provides:

"A board may, in lieu of extending the mains or distributing pipes, use the amount above specified or a part thereof, in improving, perfecting or bettering the existing system, such as mains, reservoir, pumping station, filter and land."

The term "may" in statutes has frequently been construed by the courts as mandatory. Newburgh Turnpike Co. v. Miller, 5 Johns. Ch. 101, 113, 9 Am. Dec. 274; Mayor v. Furze, 3 Hill, 612, 614; People v. Supervisors, 51 N. Y. 401, 406; Phelps v. Hawley, 52 N. Y. 23, 27; People ex rel. Conway v. Supervisors, 68 N. Y. 115; Hagadorn v. Raux, 72 N. Y. 583; People ex rel. Lockport v. Supervisors, 49 Hun, 32, 1 N. Y. Supp. 460. In Newburgh Turnpike Co. v. Miller, supra, the rule was stated as follows:

"But the principle to be deduced from the cases is that, whenever an act to be done under a statute is to be done by a public officer and concerns the public interest, or the rights of third persons, then it becomes the duty of the officer to do it."

In Mayor v. Furze, supra, the court said:

"This statute is one of public concern, relating exclusively to the public welfare; and, though permissive merely in its terms, it must be regarded, upon well-settled rules of construction, as imperative and peremptory on the corporation. When the public interest calls for the execution of a power that is conferred, the defendants are not at liberty arbitrarily to withhold it. The exercise of the power becomes then a duty which the corporation is bound to fulfill. * * * The inferences deducible from the various cases on this subject seem to be that, where a public body or officer has been clothed by statute with power to do an act which concerns the public interest or the right of third

persons, the execution of the power may be insisted upon as a duty, though the phraseology of the statute be permissive only, and not mandatory."

In People v. Supervisors, supra, the court said:

"The words 'authorized and empowered' are usually words of permission merely, and generally have that sense when used in contracts and private affairs; but when used in statutes they are frequently mandatory and imperative. In Dwarris, p. 604, the rule is laid down, as follows: 'Words of permission shall in certain cases be obligatory. Where a statute directs the doing of a thing for the sake of justice, the word "may" means the same thing as the word "shall." ' "

Considering the injustice a water board might perpetrate on a bare minority of property holders in a village, considering that all property in the village is liable for the expense of the construction and maintenance of the system, and considering that the cost of extensions is not usually violently out of proportion to the pro rata cost of original installation, I believe that the true construction of the statute is that, when a village avails itself of the privilege to establish a waterworks system, it must, as long as any property owner asks it, extend the mains of the waterworks system to supply such unsupplied properties, provided, however, that in villages of the fourth class, as Forestville is, such extensions can be made in any one year at a cost not to exceed $500. It was the intent of the Legislature to make this kind of an extension compulsory on the village, and if any village establishes a waterworks system it may not rest when it has supplied a chosen few. This view is fortified with other provisions of the statute. The amount of money to be expended for such extensions, unless a special election authorizes more, is limited to $500 in villages of the fourth class, $1,000 in those of the third, $1,500 in those of the second, and $2,000 in those of the first class. Here is found a legislative rule which, in effect, proportions the expense of extensions generally according to the original cost of the installation of the system; for it must be, from the nature of things, that the initial cost of a system in a village of the first class would be more than that in a village of the second, and in a village of the second more than that in a village of the third, and so on down. I think that the word "may," used in the last sentence of the section, where it is provided that "a board may, in lieu of extending the mains or distributing pipes, use the amount above specified * * * in improving, bettering or perfecting the existing system, * * *" is permissive, and the fact that a permissive "may" is found in this sentence makes for the interpretation of the section as a whole which I have adopted. The fact that the section provides that "a board may, in lieu of extending the mains," improve the existing system, seems to indicate that the board is bound to make extensions, always provided, of course, they are demanded. The section amply protects the village and its property owners against reckless extensions; for, in villages of the fourth class, extensions costing more than $500 cannot be made except "when authorized by a proposition adopted at a special election."

This interpretation of the section does not deprive the board of water commissioners of all discretion, for it still lies with the board to determine who shall be the recipient of extensions, where property owners in different parts of the village are demanding extension to their

respective properties; and it still lies with the board to determine from what point the extension shall be made, where .the new pipe shall be laid, what size pipe shall be used, etc. When such conditions appear, the court may do no more than direct that extensions be made, leaving it to the discretion of the board to determine in what direction and how they shall be made. In the case at bar, however, there are but four unsupplied residences in the village. Of these the relator owns one, and he demands the extension of his premises. It affirmatively appears by the affidavit read for the defendants that his neighbor, Kramer, another of the four, does not demand extension to his premises, and the defendants have not made it appear that either of the other two property owners have been or are demanding extension in their direction. It was also stated on the argument that the relator was the only property owner demanding an extension.

My own research has disclosed a sentence by Farnham, in the first volume of his Waters & Water Rights, at page 689, as follows:

"Even when authority has been obtained from the Legislature to procure a water supply, it is a mere privilege, and a municipality cannot be compelled to act upon it, and therefore no citizen has a right of action for failure of the municipality to furnish the water or extend the mains so as to supply his property."

If Mr. Farnham had omitted the last clause from this sentence, his statement of the law would not have been at fault, for it is doubtless true that the mere obtaining by a municipality of authority to procure a water supply does not vest in a citizen a right of action to compel the installation of a waterworks system; but this is a long way from saying that, where a waterworks system has been actually established, pursuant to authority obtained from the Legislature, a citizen has no right of action for failure of the municipality to extend its mains so as to supply his property. After all is said, the determination of the question here, or of a similar question, must always depend upon the construction of the statute, which authorizes, permits, or enjoins the extension of mains. We have such a statute applying to this case.

The defendants likewise contend that, inasmuch as they have no funds available for the purpose of this extension, the court will not compel them to make expenditures, even if it be proper to compel them to act in a specific way. Although the water board has no power to raise money by taxation, yet the board of village trustees has that power, and is obliged to raise money to pay the expenses of the village, including water supply, and including the proper and legitimate disbursements and expenses of the water board. Village Law (Laws 1897, pp. 400, 404, 437, c. 414) §§ 101, 110, 235. The important provisions of these sections are as follows:

"Sec. 101. Village funds are classified as follows: * * * (2) The water fund, composed of all moneys received from taxation or otherwise."

"Sec. 110. * * * The board of trustees shall levy the tax for the current fiscal year, which must include the following items: * * * (2) The total amount of the indebtedness of the village lawfully contracted, which will become due and payable during the current fiscal year. * * * (4) Such additional sums as shall be deemed necessary to meet all other expenditures of the village for the current fiscal year."

"Sec. 235. Between the first and fourth day of March in each year the board of water commissioners shall file with the village clerk a statement of the

following facts: * * * (3) The outstanding indebtedness of the department,. either bonded or otherwise, separately stated. (4) The estimated deficiency in the amount necessary to pay principal or interest, or the expenses of the department during the next fiscal year. * * * (5) The improvements and extensions made during such preceding year and the general condition of the waterworks."

From the above section it appears that the village trustees must include in their annual tax levy such sums of money as the water board requires for its lawful indebtedness. If, therefore, acting under this section, these defendants made the extension asked for by the relator, and had insufficient rents to pay for it, such extension would have to be paid for by general tax. It is hardly necessary to cite cases holding that, if the village trustees should refuse to include such item in the tax levy,. mandamus would lie to compel them to do so.

My conclusion is that, in the exercise of its discretion, the court should direct the issuance of a peremptory writ as asked, and that the defendants should pay the relator $30 costs of these proceedings.