In the Matter of DEXTER SULPHITE PULP AND PAPER COMPANY, Petitioner, against ELTON D. SHAVER et al., Constituting the Board of Trustees and the Board of Water Commissioners of the Village of Dexter, Respondents.

Supreme Court, Jefferson County, October 27, 1944.

*A. Raymond Cornwall* for petitioner.

*W. Glenn Larmonth* for respondents.

SEARL, J.   This is an application for an order in the nature of a peremptory mandamus order (Civ. Prac. Act, art. 78) directed against the Board of Trustees of the Village of Dexter, New York, acting as the Board of Water Commissioners.

Petitioner owns and operates two mills in the village of Dexter, one used for the manufacture of pulp and the other for the making of paper.   Several hundred employees, in fact the majority of the male population of the village, are employed

in these mills. Two thirds of the village taxes are paid by the corporation owning the mills.

The Village maintains a water supply system, and a water main has been laid through Factory Street, upon which petitioner's property fronts. In the sulphite mill a sprinkler system is installed for fire protection. For years the mill has maintained a private water system by means of which water has been taken from a canal connecting with Black River. In connection with this private water system a portion of the water drawn from Black River has been pumped into a cylindrical tank twenty feet in diameter and twenty feet high supported upon a tower. This furnishes water pressure for the sprinkler system as well as for certain hydrants located on the mill property. The Village of Dexter is located down stream some eight miles westerly from the city of Watertown. Sewage from both Watertown and Dexter empties into Black River. Petitioner's moving papers indicate that the river water is at this time so impregnated with refuse that the filters through which it has to pass in reaching the sprinkler lines cannot function properly. Quantities of foreign matter clog the sprinkler lines, it is contended, to such an extent as to render the action of the system ineffectual in event of fire. Consequently the insurance carrier has made demand upon petitioner " to install a new eight-inch public water connection near the gravity tank " for the purpose of furnishing village water to the sprinkler system, thus remedying the present condition. Upon failure to make such provision within sixty days, the insurance carrier threatened to cancel all fire coverage. During the early summer of this year the petitioner requested the Village to afford connection from its water main running past the plant, to petitioner's sprinkler system.

This, respondents have refused to permit. In answer to the demand they allege that the village water supply is limited to the amount that can be obtained from two wells, one having a maximum capacity of thirty gallons per minute during the summer and one hundred gallons during winter months. The other well, as claimed, has a maximum capacity of thirty gallons per minute, with both wells showing heavy saline content in the water if greater quantities are provided. Second, the respondents claim that there is now only a sufficient supply to meet the requirements of present consumers, as village ordinances require the use of flush toilets. As a third ground, respondents urge that in one section of the village there are several houses that have their own wells for water supply

and that one of the residents through using contaminated private well water contracted typhoid fever and died during the season last past. As an additional reason for refusal, it is urged that large quantities of water are used in washing and processing pulpwood and that use of village water for these purposes would seriously deplete the supply.

As a basis for the issuance of a peremptory mandamus order, petitioner urges that section 227 of the Village Law provides that " Such pipes " (relating to supply pipes leading from mains to private premises) " can only be connected with the mains by the permission " of the Board of Water Commissioners. However, permission having been sought, petitioner urges that as a matter of right it is entitled to the permit, as is any other village taxpayer. Section 224 of the Village Law is mandatory in its language, for it provides: " Any system of water works which shall have been established by a village and every part of said water system *shall be maintained in service and service given to property lying along or fronting on any street or alley in which such water main or mains are now laid* or may hereafter be laid and from which such lots and buildings can be supplied with water unless the consent of at least seventy-five per centum of the owners of said property in number and also in value, according to the last assessment, be first obtained in writing." (Italics inserted.)

The use of the word " *shall* " leaves no doubt relative to the mandatory character of the section. When the Legislature re-enacted the above section, by chapter 873 of the Laws of 1928, the previous language of the section was completely changed. The insertion of the words " unless the consent of at least seventy-five per centum of the owners of said property in number and also in value " most assuredly was intended to have a meaning. The only logical conclusion is to effect that water service be " given to property lying along or fronting on any street " unless 75% of the owners agree in writing to the contrary. Therefore, if the words " to do otherwise " were inserted after the word " consent ", the language would conform to the apparent intent of the Legislature.

As the petitioner's mill property fronts upon Factory Street, where a main is now laid, and where no extension is required, the court must hold that the above section applies. It does not appear that other property owners as above referred to have signified to the contrary in writing.

The question is now presented as to whether the refusal of the Commissioners to afford water connection is in this case

unwarranted, unlawful, or capricious, so as to justify the granting of a peremptory order. On May 13, 1944, petitioner notified by letter Mr. Shaver, Mayor, and one of the Trustees acting as Water Commissioner, of the demand made by the Factory Insurance Association relative to the sprinkler system. Petitioner's office manager makes an affidavit to the effect that following this demand for water he was informed by Mr. Shaver, mentioned above, that the Board did not act favorably upon the application for water connection, "because at the moment the petitioner was taking action to reduce the taxes claimed to have been assessed and levied against the petitioner corporation". Although Elton D. Shaver denies in his answering affidavit that the refusal to grant a permit for water connection was brought about as result of the contest relative to taxation, still Mr. Shaver does not deny in his affidavit the statement made that the conversation referred to took place.

It is unnecessary to pursue at length the question as to whether mandamus may issue to compel water commissioners to act in a proceeding of this character. The functions of the commissioners are administrative so far as the instant application is concerned. Applicable provisions of the Village Law are referred to in the opinion of the Attorney General, dated March 3, 1936 (N. Y. Op. Atty-Gen., 1936, p. 295).

Many affidavits have been presented bearing on the question as to whether the pressure tank from which water flows to the sprinkler system is used also as a supply for general mill purposes. Concededly, if village water was furnished for the entire mill purposes no water might remain for use by the inhabitants generally. On the other hand, it would be improvident to deny water sufficient to provide pressure for the efficient maintenance of the sprinkler system. This would likely result in the mill being closed and a resulting loss of employment to most of the workers in the village.

A most impelling argument in favor of granting relief sufficient to keep the mill in operation at this time is the fact that the mill is being operated as a defense unit and its product subject to the orders of the War Production Board.

The court is convinced that limited relief should be granted at this time, especially in view of the fact that such relief can be granted without material diminution of the village water supply now available to present consumers.

The order should provide that respondent Commissioners issue a permit to petitioner to effect that water may be drawn from the Factory Street main in the village of Dexter. Connection is to be made at the expense of the petitioner. The order shall provide that only so much water shall be drawn from the main as may be reasonably required to maintain the sprinkler system in efficient operation, and that either the petitioner or respondents, or their successors, may apply at any time for a modification of the order as conditions may demand. Such an order will meet all immediate demands. Unless a fire occurs and the sprinkler heads open, there will be no diminution in the water supply generally, except such as is caused by evaporation.

As the respondents do not deny that the sprinkler system is necessary equipment in petitioner's mill to the extent that relief is granted, an alternative order is unnecessary. (*People ex rel. Hoffman* v. *Tedcastle*, 12 Misc. 468; *People ex rel. Del Mar* v. *St. Louis, Etc., Ry. Co.*, 44 Hun 552.)

There is ample authority for the issuance of an order as above outlined. (*People ex rel. Lodes* v. *Dept. of Health*, 189 N. Y. 187, 194; *People ex rel E.C.T. Club* v. *State R. Commission*, 190 N. Y. 31, 33; *Matter of Village of Massena* v. *St. Lawrence W. Co.* 126 Misc. 524, 533.)

An opinion in *People ex rel. Hilliker* v. *Pierce* (64 Misc. 627) presents a situation very similar to that in the instant proceeding. There it was aptly stated: " * * * the court will not put its discretion in the place of the discretion of the defendants in mandamus proceedings. But, where the Legislature has left no option with the defendant, but has specifically enjoined the performance of a particular duty, the courts may, in *their* discretion, compel the performance of that duty, whether it be a co-called ' governmental function ' or not * * * and if any village establishes a waterworks system it may not rest when it has supplied a chosen few.''

The court finds that the refusal on the part of respondents to issue a permit was, under the circumstances, unreasonable and contrary to the requirements of the statute. An order may issue in accordance with the provisions hereinbefore referred to.