ESTATE of Samuel E. BOGLEY, et al.

v.

The UNITED STATES.

No. 52–73.

United States Court of Claims.

April 16, 1975.

Stephen D. Kahn, Washington, D. C., for plaintiff. Jerry M. Hamovit, Cleveland, Ohio, attorney of record.

William Kalish, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Theodore D. Peyser and John E. Evans, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and SKELTON and BENNETT, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge:

This is a suit by the Estate of Samuel E. Bogley, deceased, acting through Leonard S. Melrod and Warren Browning, Co-administrators, for the recovery of $32,380.10 federal estate taxes, plus interest thereon, assessed and collected from such estate by the Internal Revenue Service. The facts giving rise to the suit are as follows:

The decedent, Samuel E. Bogley, was, from 1955 until his death on January 8, 1967, an officer, employee and director in each of three corporations, namely, Bogley, Harting, Mahoney, and Lebling, Inc. (hereinafter BHM&L); Bogley, Harting, Mahoney, and Lebling of Virginia, Inc. (hereinafter Virginia); and Bogley, Harting and Hight of Prince Georges County, Inc. (hereinafter Prince Georges). At his death, Bogley also was a stockholder in each of the three corporations, owning 50 percent of the common stock of BHM&L, 28 percent of the common stock of Virginia, and 34 percent of the common stock of Prince Georges.

The directors of BHM&L passed a resolution and the directors of Virginia passed a motion during the 1950's providing that upon the death of each of their officers, the corporation was authorized to pay a certain sum to the officer's estate or beneficiary.

The resolution of BHM&L was passed on October 17, 1955, and it provided as follows:

RESOLVED that in consideration of past services and services to be rendered by Samuel E. Bogley, Frederick G. Harting, Jr., and Frank S. Hight, Jr., the Corporation is authorized upon the death of any of these officers to pay their estate or named beneficiary the total compensation received by the officer for the past two years prior to his death. This payment is to be made monthly over a two-year period following the death of the officer.

On the same day the following *motion* was made and adopted by the Board of Directors of Virginia:

In consideration of past services and services to be rendered by Samuel E. Bogley, Frederick G. Harting, Jr., Joseph J. Mahoney, Jr. and Frank S. Hight, Jr., the Corporation is authorized upon the death of any of these officers to pay their estate or named beneficiary the total compensation received by the officer for the past two years prior to his death. This payment is to be made monthly over a two-year period following the death of the officer.

On November 10, 1958, the Board of Directors of Prince Georges adopted the following resolution:

RESOLVED, that in the event of death of any of the present officers of the Corporation, namely: Samuel E. Bogley, Frank S. Hight, Frederick G. Harting, Jr., and William L. Lebling, Jr., the surviving widow or estate is to receive two years' salary based on amount being paid at time of death, as severence [sic] pay, this to be covered in part by an insurance policy of the double-indemnity type; owner of said policy to be Bogley, Harting & Hight of Prince Georges County, Inc. and expense of same to be borne by the Corporation.

The Prince Georges resolution was amplified by a further resolution of its Board of Directors on December 8, 1958:

Whereas, a question has arisen with respect to the intent of a resolution passed by the Board of Directors of this Corporation on November 10, 1958, pertaining to the payment of two years' salary to the widow or estate of certain of the officers of this corporation and whereas it is desireable [sic] to clarify the fact that such resolution was intended to impose a contractual obligation on the corporation now, therefore, be it,

RESOLVED, that the resolution providing that in the event of death of any of the present officers of the Corporation namely: Samuel E. Bogley, Frank S. Hight, Frederick G. Harting, Jr., and William L. Lebling, Jr., the surviving widow or estate is to receive

two years' salary based on the amount being paid at the time of death, as severance pay, was ,in recognition of the past services theretofore rendered to this Corporation by the several said officers, and in consideration of the future services to be rendered by each of them, and be it further

RESOLVED, that the payment of such sum shall be made within thirty (30) days after the date of death of such officer, or officers.

The decedent was present at the meetings when these actions were taken by the Boards of Directors of said corporations. He never designated anyone to receive payments from BHM&L and Virginia if they were made after his death. There is no evidence that the decedent ever communicated with the corporations, or they with him, regarding said corporate proceedings up to the time of his death.

The motion of Virginia and the resolutions of BHM&L and Prince Georges remained unchanged on their respective corporate minute books from the time they were passed and adopted until decedent's death, without any further action being taken by the corporations with reference to them.

The decedent was an officer and employee of the above corporations prior to and at the time the above motion and resolutions were passed and adopted He continued as an officer and employee of such corporations until his death on January 8, 1967. He was 52 years of age when he died and at that time his wife was 38 years old.

On or about March 23, 1967, Prince Georges paid to decedent's widow the sum of $60,000. Commencing on or about March 20, 1967, and in monthly payments thereafter until fully paid, BHM&L and Virginia paid to the plaintiff, the estate of Samuel E. Bogley, the sums of $63,833 and $62,467.92, respectively. These amounts were reported as income on federal tax returns by the decedent's widow and the plaintiff.

On or about October 8, 1968, plaintiff filed a federal estate tax return on be-

half of Samuel E. Bogley. In computing the decedent's gross estate for federal estate tax purposes, plaintiff did not include the above payments. The District Director assessed a deficiency against the estate based on the estate's failure to include in the gross estate the amount of $181,874.41, which he alleged was the commuted value of payments under the corporate motion and resolutions. After payment of the deficiencies and the filing and disallowance of a claim for refund, this suit was timely filed.

The defendant contends that the corporations made offers and promises to Bogley when they passed the motion and resolutions described above, and that Bogley accepted said offers by continuing to serve as an officer and employee of the corporations until his death, and by reason of all of which they entered into binding contracts that Bogley could have enforced during his lifetime. From this premise, the defendant argues that the payments made by the corporations after Bogley's death had a commuted value when he died, and that such commuted value should have been included in his gross estate for estate tax purposes. To support this theory, the defendant relies on Section 2033 of the Internal Revenue Code of 1954 (26 U.S.C. § 2033 (1970)) with respect to the payments made by BHM&L and Virginia Section 2033 provides in effect that the value of the gross estate of a decedent shall include the value of all property in which the decedent had an interest at the time of his death. The defendant contends that Bogley had an interest in the BHM&L and Virginia payments when he died. In the alternative, defendant says that even if decedent had no interest in the BHM&L and Virginia payments when he died, he had a general power of appointment under which he could name the beneficiary who would receive the payments, and, therefore, Section 2041 of the Code (26 U.S.C. § 2041 (1970)) required the payments to be included in his estate.

As to the Prince Georges payments, defendant says they are not includable in

the decedent's estate under Section 2033 because they were payable to his wife after his death, but that since his wife survived him, he made a transfer of his reversionary interest to her and that by reason of such facts, Section 2037 of the Code (26 U.S.C. § 2037 (1970)) requires the payments to be included in his estate if his reversionary interest exceeds five percent of the value of such property, which defendant says is the case here.

The basic position of the plaintiff is that there were no contracts between Bogley and the three corporations, and that the corporations were not contractually bound to make the described payments. This being true, plaintiff asserts that the arguments and contentions of the defendant are invalid and that Sections 2033, 2041 and 2037 of the Internal Revenue Code of 1954 have no application to this case. The plaintiff says further that all that decedent had was a mere expectancy of payment by the corporations and that under these circumstances, the payments were not required to be included in decedent's gross estate.

The defendant agreed in its brief and at oral argument that if the corporations were not contractually obligated to make such payments and that if the deceased possessed a mere expectancy of payment, the inclusion of the items in the gross estate of decedent would not be required. Therefore, the threshold question that must be resolved is whether or not enforceable contracts existed between Bogley and the three corporations that contractually bound them to make the described payments after Bogley's death. This requires an examination of the basic principles of contract law and the application of those principles to the facts of this case. A contract has been defined as follows:

§ 1. Contract. A contract is a promise, or set of promises, for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty. [Footnote omitted.] [1 Williston, Contracts § 1 (1957) 3d. Ed.]

In Farrington v. Tennessee, 95 U.S. 679, 24 L.Ed. 558 (1877) the Supreme Court said:

* * * [T]he ingredients of a contract are parties, consent, consideration, and obligation. * * * [Id. at 685.]

In the case of Peoples Drug Stores, Inc. v. Fenton Realty Corp., 191 Md. 489, 62 A.2d 273 (1948), the court defined a contract as follows:

* * * To constitute a valid contract, the offer of one party must be certain and definite, and the acceptance of the other party must correspond with the offer in its entirety. A contract, to be final, must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement. Until actual completion of the bargain either party is at liberty to withdraw his consent and put an end to the negotiations. * * * [Cases omitted.] [Id. at 494, 62 A.2d at 276.]

It is fundamental that in order to have a valid contract one party must make an offer that is a promise which is conditional upon receipt by the offeror of some act or promise from the offeree, and the offer must be accepted as to all its terms by the offeree. The offeree must give in return for the offeror's promise exactly the consideration which the offeror requests and the acceptance must be made absolutely and unqualifiedly. See Restatement of Contracts § 32 (1932); Reiser Company v. Baltimore Radio Show, Inc., 169 Md. 306, 181 A. 465 (1935); Brown v. Fahey, 157 Md. 481, 146 A. 264 (1929); Belmont v. McAllister, 116 Va. 285, 81 S.E. 81 (1914).

An expression of intention is not an offer. See 1 Williston on Contracts, supra, § 26, where it is stated:

§ 26. Expression of Intention is Not an Offer. Since an offer must be a promise, a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer.

Therefore, \* \* \* a vote of a private corporation, does not of itself amount to an offer, though it may be so communicated by the corporation to another as then to become an offer. [Footnotes omitted.]

This principle will be discussed further, *infra*. It is also fundamental that a contract must be supported by sufficient and valuable consideration, which has been defined as:

> \* \* \* [A] detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor. \* \* \* [Footnotes omitted.] [1 Williston, Contracts § 102 (1957).]

The general rule almost universally followed is that past consideration is no consideration. 1 Williston, Contracts, *supra*, at § 142. Also a promise to do what one is required by law or contract to do is not a valuable consideration. *See* People's Banking Co. v. Fidelity & Deposit Co., 165 Md. 657, 170 A. 544 (1934); 13 C.J. Contracts §§ 207, 209 (1917); Berger v. Burkoff, 200 Md. 561, 92 A.2d 376 (1952).

## I

## The BHM&L and Virginia Transactions

Applying the foregoing principles to the BHM&L and Virginia transactions, we find that the conditions and requirements necessary for valid and enforceable contracts with Bogley are entirely missing. The votes of the directors of the corporations in passing the motion and in adopting the resolution were not offers nor promises to Bogley. They did not require him to promise anything nor to do anything. They referred to his past services and future services for the corporations, but there was nothing to indicate the nature of such future services, nor compensation to be paid for same, nor how long the services were to be performed; nor was any mode provided for deciding such matters. His employment could be terminated at any time by the corporations or by his resignation, or by his possible retirement.

We are convinced that the adoption of the motion and the resolution by the BHM&L and Virginia corporations were mere expressions of their intention or policy and did not amount to an offer to Bogley. *See* 1 Williston, Contracts, supra at § 26. This was the exact holding of the court in Beverage Distributors, Inc. v. Olympia Brewing Co., 440 F.2d 21 (9th Cir. 1971), cert. denied, 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682, where the court said:

> A gratuitous and unsolicited statement of policy or of intention which receives the concurrence of the party to whom it is addressed, does not constitute a contract. Goetz v. State Farm Mutual Automobile Insurance Co., 31 Wis.2d 267, 142 N.W.2d 804, 807 (1966); 1 Williston on Contracts (3d ed., Jaeger) § 1A, p. 5. Or as it is sometimes stated, since an offer must be a promise, a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer. Lahaina-Maui Corp. v. Tay Tet Hew, 362 F.2d 419 (9th Cir. 1966); Winand v. Case, 154 F.Supp. 529 (D.Md.1957); Parrish v. General Motors Corp., 137 So.2d 255 (Fla.App. 1962); 1 Williston, *id.*, § 26, p. 59. [*Id.* at 29.]

This principle was reiterated by the court in Bellows v. Porter, 201 F.2d 429 (8th Cir. 1953) in the following language:

> \* \* \* A mere assurance that a party may act in a certain matter, standing alone, can not be converted into a contract. The rule is stated in Williston on Contracts, Vol. 1, Sec. 26, page 32, as follows:
>
> "Since an offer must be a promise, a mere expression of intention and general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer."

The applicable principle is stated in Page on Contracts, Vol. 1, 2nd Ed., Sec. 77, as follows:

"A declaration of intention to act in a certain way which does not show that the party who makes such declaration promises to act in such a way or intends to incur legal liability obliging him to act in such a way is not an offer which can be accepted so as to make contract."

The expression of an intention to do an act is not an offer to do it. Porter did not promise to do or to refrain from doing anything. He simply forecast what he might do in the future. The transaction is lacking in the elementary essentials of a binding contract. In any event it is not so accurate and certain as to warrant a court of equity to require its specific performance. * * * [*Id.* at 431.]

To the same effect is the decision of the court in Winand v. Case, 154 F.Supp. 529 (D.Md.1957), where Winand sued to recover damages for breach of a written contract to employ him for life. The court denied relief saying that "at the most" the plaintiff had a contract of employment for an indefinite period, terminable at will. The court said:

The aforegoing conclusions aside, the plaintiff still, as a matter of law, could not recover. The wording of the letter of June 9, 1944, and in particular the wording of paragraph 3 therein, are subject to the criticism advanced by Judge Parker in Lucas v. Federal Reserve Bank of Richmond, 4 Cir., 1932, 59 F.2d 617, 619:

"It is clear that the first cause of action states no ground of relief either in contract or in tort. The allegation that the Reserve Bank promised to 'extend such additional accommodations in the way of discounts as would be necessary to meet the additional burden assumed' sets forth none of the essential terms of a contract. It does not show the amount of credit to be extended, *the period of the credit,* the *amount or kind of security* to be deposited as collateral, or *the interest to be paid.* The court cannot see by reading it any definite agreement

which the law could enforce. In the language of Mr. Justice Holmes, 'On the face of it, it does not import a legally binding promise, but rather a hopeful encouragement, sounding only in prophecy.' Hall v. First Nat. Bank of Chelsea, 173 Mass. 16, 53 N.E. 154, 155, 44 L.R.A. 319, 73 Am. St.Rep. 255. It is well settled that such a vague promise does not constitute a binding and enforceable contract." * * * [Emphasis in original.] [Footnote omitted.] [*Id.* at 541–42.]

A case very much in point is Asbury v. Hugh L. Bates Lodge No. 686, F. & A.M., 62 Ohio App. 430, 24 N.E.2d 638 (1939), where a masonic lodge passed a resolution to buy certain realty from certain of its members for $15,000 and authorized its officers to purchase the property. The owners were present when the resolution was passed. Nothing more was done and the owners sued, claiming breach of a contract of purchase. The court held:

Mere statements of intention, promissory expressions, or statements made to third persons are not sufficient, in themselves, to create contractual obligations. 17 Corpus Juris Secundum, Contracts, § 46, 387 et seq.; Upsal Street Realty Co. v. Rubin, 326 Pa. 327, 192 A. 481; Broad St. National Bank of Trenton v. Collier, 112 N.J.L. 41, 169 A. 552, 553; Stone v. Commonwealth Finance Corp., 127 Misc. 368, 216 N.Y.S. 639; Georgia Cane Products Co. v. Corn Products Refining Co., 141 Ga. 40, 80 S.E. 318. * * *

This intramural action of the lodge did not create an extraneous obligation any more than a resolution reached in the secret places of the mind of a natural person would bind him to an offeror, whose offer he had thus concluded to accept. [*Id.* at 639.]

A similar case was Benton v. Springfield Young Men's Christian Ass'n., 170 Mass. 534, 49 N.E. 928 (1898), where a Y.M.C.A. voted to reject all plans submitted for a new building, including those submitted by plaintiff architect,

but voted to choose plaintiff to supervise the construction of the new building, but later rescinded this vote. Plaintiff contended a contract was made with him by the vote selecting him as the architect. The court rejected plaintiff's claim and held:

* * * The vote did not specify any terms or duties in detail, and it was not in form or intention a contract or the offer of a contract. It was merely an initiatory step, signifying the intention or purpose of the committee, and was not an act by which they meant to be bound as by a contract. * * * [*Id.* at 929.]

In the case of Cumberland & O. V. R. R. v. Shelbyville, B. & O. R. R., 117 Ky. 95, 77 S.W. 690 (1903), the court held:

* * * A resolution adopted on the part of the directory or at a stockholders' meeting of a corporation declaring their willingness to sell the corporate property at a certain figure, and empowering the president to consummate the sale by executing and delivering the necessary deed, will not alone be a contract of sale. *It is so far an unexecuted purpose or intention to sell.* * * * There was no time when the Shelbyville * * * Company was legally bound to convey its property to the Cumberland * * * Company. All that the parties undertook to do * * * was voluntary, and fell short of becoming obligatory as a contract, executed or otherwise. [Emphasis supplied.] [*Id.* at 692.]

A similar holding is found in the case of Talley v. Curtis, 23 Tenn.App. 181, 129 S.W.2d 1099 (1939), where a tenant fell on defective stairs and sued the landlord, claiming the latter had promised to repair the steps long after the house had been leased to plaintiff. The court held for landlord, saying:

The statement of defendant that, "I will have to put in new steps", * * * imported merely an intention on the part of defendant, rather than a covenant with plaintiff that he would "put in new steps."

"Since an offer must be a promise a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer." Williston on Contracts, Vol. 1, sec. 26.

"The mere expression of an intention or desire is not a promise; the promise is an undertaking to carry the intention into effect." 12 Am.Jurisprudence, page 498, sec. 3. [*Id.* at 1102]

In the case of Stone v. Commonwealth Finance Corp., 127 Misc. 368, 216 N.Y.S. 639 (1924), aff'd, 215 App.Div. 704, 212 N.Y.S. 924 (1925), aff'd, 243 N.Y. 528, 154 N.E. 592 (1926), a letter from a finance corporation to its subsidiary, reciting its readiness to place its resources behind the subsidiary's project to establish a trade exposition to the extent necessary to insure its complete success and authorizing the subsidiary to use the letter in any way it saw fit, was held to be a mere statement of intent and not a contract with prospective exhibitors or with the subsidiary for their benefit. The court said referring to the letter:

* * * It lacks any expression which can be construed as an offer to enter into a contract. In a sense it is an assurance. But every expression in the nature of an assurance is not a guaranty. * * *

*The letter is a mere statement of intention.* Neither an offer nor intent to assume contractual liability, nor the essential element of agreement can be discovered or implied. * * * [Emphasis supplied.] [127 Misc. 368, 216 N.Y.S. at 641.]

Finally, on the matter of intention and policy not being sufficient as an offer, mention should be made of the case of Borden v. Skinner Chuck Co., 21 Conn. Sup. 184, 150 A.2d 607 (1958). There the court held:

It is basic, however, that there must be an offer upon the employer's part. *A mere expression of intention or general willingness to do something on*

*the happening of a particular event or in return for something to be received does not amount to an offer.* 1 Williston, Contracts (Rev. Ed.) § 26. \* \* [Emphasis supplied.] [150 A.2d at 610.]

■ We think the foregoing statement is unquestionably the law, and that accordingly all we have here in the corporate motion and resolutions were expressions of intention or policy and not offers to Bogley. The theory of the defendant is not helped by the fact that the resolution of BHM&L and the motion of Virginia contained the word "authorized" with respect to the payments.[1] The word "authorized" is a word of permission and not one of obligation in private contracts. *See* 17 Am.Jur. Contracts, § 281 (1964), and 4A Words and Phrases, Authorization, at 623 et seq.; People v. Young, 100 Ill.App.2d 20, 241 N.E.2d 587 (1968); Midland Iron & Steel Corp. v. Chicago R. I. & P. Ry., 4 Ill. App.3d 369, 280 N.E.2d 52 (1972); Shopen v. Bone, 328 F.2d 655 (8th Cir. 1964); and J. D. & H. Enterprises Corp. v. Byrne, 12 Misc. 1066, 175 N.Y.S.2d 726 (1958). The court there held:

> \* \* \* The word "authorized" is a word of permission merely, and generally has that sense when used in contracts in private affairs (People ex rel. Hilliker v. Pierce, 64 Misc. 627, 119 N.Y.S. 21, 26). \* \* \* [175 N.Y.S.2d at 728.]

To the same effect is the decision in People ex rel. Hilliker v. Pierce, 64 Misc. 627, 119 N.Y.S. 21 (1909). There the court held:

> In People v. Supervisors, supra, [51 N.Y. 401, 406] the court said:
>
> "The words 'authorized and empowered' are usually words of permission merely, and generally have that sense when used in contracts and private affairs; \* \* \*. [119 N.Y.S. at 26.]

We pointed out above that "a vote of a private corporation does not of itself amount to an offer," 1 Williston, Contracts, § 26, *supra.* In addition to the cases cited in the foregoing paragraphs showing that this is the law, we call attention to the decisions of the courts in Sears v. Kings County El. Ry., 152 Mass. 151, 25 N.E. 98 (1890); Alabama Lime & Stone Co. v. Adams, 218 Ala. 647, 119 So. 853 (1928); Palmer v. Stokely, 255 F.Supp. 674 (W.D.Okl.1966); and Hazard v. Hope Land Co., 69 A. 602 (R.I.1908), where a corporation's directors voted "That G. B. Hazard be given the ice cream, candy, and pop corn privilege to November 1, 1909, for $1,200 per year." The court held:

> \* \* \* In our opinion this vote cannot be construed as a completed contract in itself. \* \* \* As the case stands on the record, we are of the opinion that *the vote in itself is not a completed contract,* but rather a preliminary to a contract to be made and carried out in the future, in some mode to be subsequently agreed upon by the parties, and is so uncertain and indefinite in its nature that in itself it is not a subject which equity will protect by means of an injunction. It is rather in the nature of an authority to the agents of the defendant to go forward and make a contract such as would be appropriate to effectuate the manifest intention of the parties. [Emphasis supplied.] [*Id.* at 603–04.]

It is stated in 1 Williston, Contracts, § 64:

> Acceptance of an offer is necessary to create a simple contract, since it takes two to make a bargain. \* \* \*

It is clear that there was no acceptance by Bogley of any offer by BHM&L and Virginia because said corporations made no offers to him. Obviously, if there is no offer, there is nothing to accept.

For the foregoing reason, we hold that Bogley did not have enforceable contracts with BHM&L and Virginia during his lifetime, and that the corporations were not contractually bound to make

---

1. The resolution of Price Georges did not contain the word "authorized," but stated that "the surviving widow or estate is to receive [the payments]." Perhaps this has the same meaning as "authorized."

the described payments. We hold therefore that Bogley possessed a mere expectancy of payment which is not a property right, and, consequently, the inclusion of the items in his gross estate was not required. *See* Dimock v. Corwin, 19 F.Supp. 56 (E.D.N.Y.1937), aff'd on other grounds, 99 F.2d 799 (2d Cir. 1938), aff'd sub nom., United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763 (1939). Accordingly, we do not reach the arguments of defendant with reference to sections 2033 and 2041 of the Internal Revenue Code of 1954 (26 U.S.C. §§ 2033, 2041) because they are not applicable to the BHM&L and Virginia transactions.

## II

### The Transactions Between Prince Georges and Bogley

Most of the infirmities pointed out above in the transactions between BHM&L, Virginia and Bogley did not exist in the dealings between Prince Georges and Bogley. There were many differences between the two situations which will be pointed out below.

The Prince Georges resolutions considered together showed a clear intent on the part of the corporation to enter into a binding contract with each of its officers, including Bogley, to pay their widows or estate two years' salary based upon the amount being paid at the time of death. This is definitely shown by the language of the second resolution as follows:

\* \* \* [W]hereas it is desireable [sic] to clarify the fact that such [prior] resolution *was intended to impose a contractual obligation on the corporation* \* \* \*. [Emphasis supplied.]

██ While it could be argued that these resolutions were merely statements of intention or policy, as was the case with the resolution and motion of BHM&L and Virginia, *supra*, we think that even if this were true, they were communicated to Bogley, who was present when they were adopted, in such a way as to amount to a promise and an offer. This is one of the exceptions to the general rule stated in 1 Williston, Contracts § 26 where it is stated in pertinent part:

§ 26. Expression of Intention is Not an Offer. \* \* \* [A] vote of a private corporation, does not of itself amount to an offer, *though it may be so communicated by the corporation to another as then to become an offer.* [Emphasis supplied.] [Footnotes omitted.]

A careful reading of the resolutions shows that they were in fact a promise and an offer to Bogley that in recognition of his past services to the corporation[2] and in consideration of future services to be rendered by him to the corporation until his death, the corporation would pay his widow or estate two years' salary based on the amount being paid to him at the time of his death. While it is true the resolutions do not state what services he was to render in the future, nevertheless, the plain meaning of the resolutions was that he had to work for the corporation the rest of his life and be on its payroll at the time of his death. We can assume that there was an agreement between the corporation and Bogley as to the nature of his future services, as it is inconceivable that a contract would be made binding a person to work for a corporation the rest of his life without an understanding as to the work he would perform. Even if this one element was not specifically agreed upon, the contract would not be unenforceable, as an agreement was reached on all the other essential provisions of the contract.

It is also true that the compensation to be paid to Bogley was not specifically mentioned in the corporation's resolutions. However, his compensation was at least indicated by the second resolution dated November 10, 1958, wherein the corporation was obligated to purchase a $25,000 insurance policy of the double indemnity type on Bogley's life,

2. Of course, past services are not consideration as pointed out above in our discussion of the BHM&L and Virginia transactions.

effective December 1, 1958, to provide funds at least in part equal to two years' salary based on the amount being paid to him at the time of his death. We can conclude from these facts that Bogley's salary was to be $25,000 or more per annum. As a matter of fact, the record shows that during the last two years of his life, Bogley's salary was $30,000 per year. Both parties agreed in their pretrial submission that the corporation had an insurance policy of the double indemnity type on Bogley's life *sufficient to cover the payment in issue here* ($60,-000).[3] Evidently the original policy was later increased somewhat.[4] At any rate, the approximate amount of Bogley's salary was indicated in the second resolution by the amount of the insurance policy the corporation was required to buy.[5] After Bogley's death the corporation paid his widow $60,000 from the proceeds of the insurance policy.

[11] We hold that these resolutions were sufficient as a unilateral promise and offer to Bogley by the corporation. The offer did not require a promise on the part of Bogley. He could accept it by performance, which he did by working for the corporation until his death. Also, there was a meeting of the minds on the essential provisions of a contract. Under these circumstances, there was a unilateral contract between the corporation and Bogley. His performance was consideration for the contract. *See* Restatement of Contracts §§ 12, 29 and 45 (1932).

It is not unusual for corporations to contract with officers and other employees to make payments to a surviving widow or other beneficiary in consideration of future services to be rendered by the officer or other employee. The test is whether or not an enforceable contract has been made. *See*

Kramer v. United States, 406 F.2d 1363, 186 Ct.Cl. 684 (1969); Harris v. United States, 72–1 U.S.Tax Cas. ¶ 12,845 (C.D. Cal.1972); and Worthen v. United States, 192 F.Supp. 727 (D.Mass.1961).

Having concluded that Bogley had an enforceable contract with Prince Georges at the time of his death, we will now consider whether or not section 2037 of the Internal Revenue Code of 1954 (26 U.S.C. § 2037) required the inclusion of the payments in his gross estate for estate tax purposes. Section 2037 provides in pertinent part as follows:

§ 2037. Transfers taking effect at death.

(a) General rule.—

The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time after September 7, 1916, made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, if—

(1) possession or enjoyment of the property can, through ownership of such interest, be obtained only by surviving the decedent, and

(2) the decedent has retained a reversionary interest in the property (but in the case of a transfer made before October 8, 1949, only if such reversionary interest arose by the express terms of the instrument of transfer), and the value of such reversionary interest immediately before the death of the decedent exceeds 5 percent of the value of such property.

(b) Special rules.—

For purposes of this section, the term "reversionary interest" includes a

---

**3.** The record shows that BHM&L and Virginia also had double indemnity policies on Bogley's life, but, unlike Prince Georges, they were not required to buy them. Their policies were purchased voluntarily for their own protection.

**4.** Bogley died as the result of an accident. This required the insurance company to pay double the face amount of the policy.

**5.** The purchase of the insurance policy by Prince Georges is significant for another reason. It was a positive step taken by the corporation to carry out the promise and offer it had made to Bogley, which showed that the resolutions were not mere statements of intention or policy.

possibility that property transferred by the decedent—

(1) may return to him or his estate, or

\* \* \* \* \* \*

■ It is clear from reading the above portions of section 2037, as applied to this case, that before the value of the payments were required to be included in Bogley's gross estate for estate tax purposes, he must have (1) made a transfer of his interest to his wife during his lifetime, (2) his wife could only obtain the property by surviving him, and (3) he retained a reversionary interest in the payments which exceeded five percent of their value immediately before his death.

■ As to the first requirement, we are of the opinion that Bogley did make a transfer of his interest to his wife during his lifetime by making the contract with Prince Georges. This identical question was decided in Estate of Fried, 54 T.C. 805 (1970), aff'd, 445 F.2d 979 (2d Cir. 1971), cert. denied, 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 663 (1972) where the court held:

The inclusion of the death benefit in the gross estate is required by section 2037 of the Internal Revenue Code of 1954. The requirements for inclusion in the gross estate in this section are a transfer by the decedent a right to receive the benefit arising only through survival of the decedent, and the existence in the decedent of at least a 5% reversionary interest. Here the wife's right to receive the benefit was conditioned upon the death of the decedent and the decedent possessed a reversionary interest, since by the terms of the agreement if there were no widow the money was to pass to the decedent's estate. The estate does not seem to dispute that the value of the reversionary interest is greater than 5%. [445 F.2d at 983.]

See also Worthen v. United States, supra, and Kramer v. United States, supra.

■ It is clear as to the second requirement that Bogley's wife had to survive him in order to receive the payment. The provisions of the Prince Georges resolutions plainly so provide. She did survive him and received the payment.

■ The third requirement is somewhat ambiguous as to whether the reversionary interest would go to Bogley's estate or his widow's estate. The first resolution provided:

\* \* \* [T]he surviving widow or estate is to receive two years' salary \* \* \*. [Emphasis supplied.]

This provision could be interpreted to mean that the reversionary interest would go to the widow's estate and not to Bogley's estate. The second resolution is somewhat different. The preamble to the resolution states:

Whereas, a question has arisen with respect to the intent of a resolution passed by the Board of Directors of this Corporation on November 10, 1958, pertaining to the payment of two years' salary to the widow or estate of certain of the officers of this corporation \* \* \*. [Emphasis supplied.]

This preamble to the resolution makes it appear that the reversionary interest would be payable to the estate of the officers of the corporation instead of to the widow's estate. However, the second resolution, as distinguished from the preamble, is like the first in that it provided:

\* \* \* [T]he surviving widow or estate is to receive two years' salary \* \* \*. [Emphasis supplied.]

Admittedly, it could be argued that the reversionary interest was to go to the widow's estate. It is a close question. However, we conclude that the intent and meaning of the resolutions was that the reversionary interest would go to Bogley's estate. That being true, the value of the payment was required to be included in Bogley's gross estate if his reversionary interest exceeded five percent of the value of the payment.

Pursuant to his authority under section 7805(a) to "prescribe all needful

* * * regulations," the Secretary of the Treasury has promulgated regulations prescribing the manner and method to value a reversionary interest under section 2037.

Treas.Reg. § 20.2037–1(c)(3) (1972) on Estate Tax, provides in applicable part as follows:

> (3) For purposes of this section, [section 2037] the value of the decedent's reversionary interest is computed as of the moment immediately before his death, * * *. The value is ascertained in accordance with recognized valuation principles for determining the value for estate tax purposes of future or conditional interests in property. (See §§ 20.2031–1, 20.-2031–7, * * *.) * * *

Section 20.2031–1(b) of the Regulations provides in pertinent part as follows:

> (b) Valuation of property in general. The value of every item of property includible in a decedent's gross estate under sections 2031 through 2044 is its fair market value at the time of the decedent's death, * * *.

Section 20.2031–7 of the Regulations provides in pertinent part as follows:

> (a) In general. (1) For estates of decedents dying on or before December 31, 1970, * * * the fair market value of * * * reversions is their present value determined under this section. * * *
>
> (2) * * * For purposes of the computations described in this section, the age of a person is to be taken as the age of that person at his nearest birthday.
>
> \* \* \* \* \* \*
>
> (e) Actuarial computations by the Internal Revenue Service. If the valuation of the interest involved is dependent upon the continuation or the termination of more than one life or upon a term certain concurrent with one or more lives, a special factor must be used. The factor is to be computed upon the basis of the Makehamized mortality table appearing as Table 38 of United States Life Tables and Actuarial Tables 1939–1941, published by the United States Department of Commerce, Bureau of Census, and interest at the rate of 3½ percent a year, compounded annually. * * *

Applying the table and interest rate prescribed by Regulations section 20.2031–7(e), the Commissioner determined that decedent's reversionary interest in the Prince Georges contract immediately before his death exceeded five percent of the value of the subject property. The Commissioner's determination of value based on the use of tables and interest rates prescribed by Regulations is *prima facie* correct. Bowden v. Commissioner, 234 F.2d 937 (5th Cir. 1956), cert. denied, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123. The taxpayer not only must show that the Regulations are unreasonable and unrealistic and that a more reasonable method of valuation is available, but also that the decedent's reversionary interest was five percent or less of the value of the property. *See* United States v. Correll, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967), McMurtry v. Commissioner, 203 F.2d 659 (1st Cir. 1953). The taxpayer has failed to carry this burden. In fact, the value as determined by the Commissioner has not been challenged by the plaintiff.

Accordingly, defendant's motion for summary judgment is denied and plaintiff's cross motion is granted as to the payments made by the BHM&L and Virginia corporations to Bogley's widow in the sums of $63,833 and $62,467.92, respectively, and judgment is entered for plaintiff for the amount of the deficiency assessment made by the Commissioner by reason of such payments, plus interest thereon as provided by law from December 23, 1971, the date the assessment was paid, to the date of the payment of this judgment to plaintiff by defendant.

Defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied with respect to the deficiency assessment made by reason of the Prince Georges

payment of $60,000 to Bogley's widow, and plaintiff's petition for a refund of the amount of such assessment is dismissed.

The case is remanded to the trial judge for a determination of the amount due the plaintiff under Rule 131(c) by reason of this judgment.